UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| SCOTT L. BRADY, | Case No. 6:24-cv-00885-MTK |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| CENLAR, FSB; QUALITY LOAN SERVICE CORPORATION; and CITIMORTGAGE, INC., | |
| Defendants. | |

**KASUBHAI,** United States District Judge:

The claims of Plaintiff Scott L. Brady ("Plaintiff") arise out of a loan dispute that resulted in a nonjudicial foreclosure sale of Plaintiff's home ("Property"). Third Am. Compl. ("TAC"), ECF No. 47. Before the Court is Defendant Quality Loan Service Corporation's ("Quality") Motion to Dismiss, ECF No. 56. For the reasons explained below, Quality's Motion is DENIED.

## BACKGROUND

The following allegations are accepted as true for purposes of ruling on the present Motion.

**I.    The Loan**

On March 6, 2006, Plaintiff took out a $150,000 loan for personal use. TAC ¶¶ 2-3. To obtain the loan, Plaintiff signed a promissory note ("Note"), secured by a deed of trust ("Deed of Trust") for the Property. At the relevant period, Defendant CitiMortgage, Inc. ("Citi") was the

beneficiary of the Deed of Trust; Defendant Quality was the trustee of the Deed of Trust; and Defendant Cenlar, FSB ("Cenlar") was the loan servicer who acted on behalf of Citi to service Plaintiff's loan payments. TAC ¶¶ 4-6. Plaintiff alleges that Cenlar acted as Citi's agent and at Citi's direction and that Cenlar employed Quality to conduct the foreclosure sale, discussed below. TAC ¶¶ 6, 34. As collateral for the $150,000 loan, Plaintiff executed a deed of trust. TAC ¶ 2. The Deed of Trust conveyed Plaintiff's Property to a trustee (Quality). TAC ¶¶ 3, 5. If Plaintiff failed to pay back the lender (Citi), the trustee (Quality) had the power to sell the Property for the benefit of the beneficiary/lender (Citi). Plaintiff's Note had a maturity date of April 1, 2021, at which date the balance of Plaintiff's loan would come due. *Id.* at ¶ 9.

## II.     Plaintiff's Default

As servicer of the loan on behalf of Citi, Cenlar withdrew monthly loan payments directly from Plaintiff's bank account. TAC ¶ 7. When the loan matured on April 1, 2021, Plaintiff was current on his monthly payments. TAC ¶¶ 8-9.  Despite the maturity date, Cenlar continued to debit Plaintiff's normal monthly payment from Plaintiff's checking account each month from April 2021 to August 2021. TAC ¶ 10.

After withdrawing Plaintiff's August 2021 payment, Cenlar began refusing to withdraw monthly payments. TAC ¶ 12. On January 21, 2022, Cenlar sent Plaintiff a letter asking him to pay the "monthly payments" owed up to that date, $7,095.04. TAC ¶¶ 13, 15. The letter contained the following language:

> **What steps do I need to take next?**
> You will need to submit a payment of $7,095.04, which is the total amount due on the loan, as soon as possible.
>
> In order to avoid a negative impact to your credit rating resulting from late payments and to avoid foreclosure, it is important that you continue to make your mortgage payment by its scheduled due date.

> Please send your payment in the total amount due to:
>
> Loss Mitigation Department
> PO Box 77408
> Ewing, NJ 08628-6408

TAC ¶ 15. After receiving Cenlar's letter, Plaintiff sent a check for $7,095.04. TAC ¶ 20. However, Cenlar returned the check, claiming that Plaintiff's payment was inadequate. *Id.*

At Cenlar's prompting, Plaintiff filled out multiple applications for Cenlar's mortgage assistance program from December of 2021 through May of 2022. Plaintiff submitted the materials requested, but his applications were rejected because he had not submitted a W-2 or a statement from his homeowner's association reflecting his fees. In a letter dated May 13, 2022, Plaintiff explained to Cenlar that because he was self-employed, he did not have a W-2, and his small 12-member HOA did not send out statements. TAC ¶ 16. Plaintiff also expressed confusion over Cenlar's refusal to accept the payments it had instructed Plaintiff to make, writing:

> On January 21, 2022, and [sic] I received what amounts to an offer to settle this loan issue by Cenlar in writing (see attached). On the second page I am given instructions under "What steps do I need to take next"? The letter directly instructs me to submit a payment of $7095.04 with the following quote "which is the total amount due on the loan as soon as possible". In the next sentence they instruct me "in order to avoid a negative impact to your credit rating resulting from late payments and to avoid foreclosure, it is important that you continue to make your mortgage payment by it's scheduled due date". I was then provided an address to send payment to.

TAC ¶ 17. Despite Plaintiff's clarifications, Cenlar rejected Plaintiff's mortgage assistance program application in a May 18, 2022 notice letter. Similar to Cenlar's January notice letter, Cenlar's May 18, 2022 notice instructed Plaintiff to "submit a payment of 11,329.80, which is the total amount due on the loan, as soon as possible." TAC ¶ 18. Once again, Plaintiff sent Cenlar the amount it demanded, and Cenlar returned the payment, claiming that the payment was inadequate. TAC ¶ 21.

On September 12, 2022, Cenlar, for the first time, sent a payoff statement showing the full balloon balance as the amount due. TAC ¶ 19. However, on September 12, 2022, Cenlar also sent a notice which stated:

> This notice is to inform you that you have defaulted in your obligations under the terms of a Note and Mortgage on the mortgaged property listed above and to advise you of certain rights you have under the loan documents. . . . The default consists of your failure to pay the monthly mortgage payments due beginning August 01, 2021 until the present. The total amount due to cure the loan may also include sums for unpaid escrow deposits and late charges. The total amount due as of the date of this letter is $ 15329.56.
>
> You have the right to cure the default on or before the date identified below by sending the required amount of $ 15329.56 to:
> Loan Servicing
> PO Box 77407
> Ewing, NJ 08628

*Id.* Plaintiff alleges that the September 12, 2022, payoff statement contradicted the September 12, 2022, notice letter. *Id.* The September 12, 2022, notice letter also did not identify a deadline to send the payment to cure the default. *Id.* Plaintiff sent Cenlar the amount demanded in the September 12, 2022 notice letter, and Cenlar again returned the payment, claiming that Plaintiff's payment was inadequate. TAC ¶¶ 20-21.

Each of Cenlar's notice letters sought the monthly payments that Plaintiff owed up to that date and did not include a request to pay the balance of the loan. TAC ¶ 14. The notice letters informed Plaintiff that he could avoid foreclosure and prevent adverse effects on his credit by making the monthly payments. TAC ¶ 15.

Plaintiff employed counsel who sent Cenlar a letter, requesting it to accept the amount it alleged was the "total amount due" and to stop reporting Plaintiff delinquent on his credit report. TAC ¶ 25. Plaintiff alleges that because Cenlar continued reporting him as delinquent on his

credit report, he was unable to refinance the loan owed to Citi and could not secure funding to make the balloon payment. TAC ¶ 27.

### III.   The Foreclosure Sale of the Property

Cenlar employed Quality to conduct a foreclosure sale. TAC ¶ 34. Quality served Plaintiff notice that it intended to conduct a nonjudicial foreclosure sale of Plaintiff's Property on April 24, 2024. TAC ¶ 35. On April 19, 2024, Plaintiff filed this action, and his counsel sought conferral with Quality's counsel about the foreclosure sale. Notice of Removal Ex. A at 7, ECF No. 1; TAC ¶ 36. On April 22, 2024, Quality's counsel indicated that the sale had been postponed to May 15, 2024. TAC ¶ 37. Plaintiff alleges that Quality failed to serve Plaintiff notice of the amended sale date, as required under Or. Rev. Stat. § ("ORS") 86.782. TAC ¶¶ 38, 40. Quality also was required to record an affidavit attesting that it served Plaintiff notice of the amended sale date. TAC ¶ 39. After multiple requests from Plaintiff's counsel, Quality produced an affidavit purportedly attesting that it had served Plaintiff notice of the amended sale date back in January 2024. TAC ¶ 41. The affidavit of service of the amended notice was not recorded, and it claimed to have been served upon Plaintiff before the original sale date was published in the newspaper. TAC ¶ 42. Plaintiff alleges that he did not receive service of the amended sale date. TAC ¶ 44. Despite Quality's affidavit, claiming that it served notice of the amended sale date in January, it published the original April sale date in the Woodburn Independent newspaper. TAC ¶ 43.

On May 15, 2024, Quality conducted a sale to Bown Enterprises, Inc. Plaintiff alleges that Quality failed to publish notice of the sale in the appropriate publication, failed to give proper notice of the sale, and in the alternative, failed to publish the correct date of the sale. TAC ¶¶ 45-47 (citing ORS 86.782, ORS 193.020, and ORS 86.774). Plaintiff alleges that if Quality had properly published the notice, more purchasers would have come to the sale and the Property

would have sold for an amount far closer to the fair market value (over $1,000,000) not the amount for which Bowen Enterprises, Inc. paid (approx. $137,000). TAC ¶ 48.

On April 24, 2025, the Court granted in part and denied in part Citi, Cenlar, and Quality's Motions to Dismiss. Opinion and Order, ECF No. 46. Plaintiff filed his Third Amended Complaint on May 8, 2025. ECF No. 47. Citi and Cenlar Answered and Quality filed the present Motion to Dismiss. ECF Nos. 55, 56, and 59.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Id.* To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Los Angeles Lakers, Inc.*, 869 F.3d at 800. The Court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## DISCUSSION

Plaintiff brings a claim against Quality for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692f(6). Plaintiff alleges that Quality violated § 1692f(6) of the FDCPA by foreclosing on Plaintiff's property without the present right to possession. TAC ¶ 70.

The FDCPA "exempts entities engaged in no more than the 'enforcement of security interests' from the lion's share of its prohibitions." *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 481 (2019) (quoting 15 U.S.C. § 1692a(6)). However, "enforcing a security interest does not grant an actor blanket immunity from the [FDCPA]." *Id.* at 480. "[T]hose who engage in only nonjudicial foreclosure proceedings" are subject to § 1692f(6) of the FDCPA. *id.* at 477, and are also subject to state regulation, *Barnes v. Routh Crabtree Olsen PC*, 963 F.3d 993, 1001 (9th Cir. 2020).

Section 1692f(6) of the FDCPA prohibits a party from:

**(6)** Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--

    **(A)** there is no present right to possession of the property claimed as collateral through an enforceable security interest;

    **(B)** there is no present intention to take possession of the property; or

    **(C)** the property is exempt by law from such dispossession or disablement.

15 U.S.C. § 1692f.

Here, Quality's nonjudicial foreclosure of Plaintiff's Property is subject to § 1692f(6). *Obduskey*, 586 U.S. at 481. Plaintiff alleges that Citi waived the maturity date and its right to foreclose for failure to make the balloon payment by telling Plaintiff that he was in default on the monthly mortgage payments, which Plaintiff promptly paid. TAC ¶ 22. Alternatively, Plaintiff alleges that Citi amended the contract by repeatedly offering Plaintiff the option to avoid foreclosure in exchange for the monthly payments due. TAC ¶ 59. Plaintiff allegedly accepted Citi's offer by sending the requested payments. Under the terms of the allegedly waived or amended contract, Plaintiff was not in default. Plaintiff alleges that because Plaintiff was not in default, Quality did not have the present right to possession to Plaintiff's property when it effected the nonjudicial foreclosure. Plaintiff also asserts the alternative theory of liability that Quality lacked the present right to possession because it failed to comply with the notice and service requirements of the Oregon Trust Deed Act.

The Court previously dismissed Plaintiff's FDCPA claim against Quality without prejudice because it found that Plaintiff's allegation that Quality lacked the present right to possession when it sold Plaintiff's property was premised on a legal conclusion regarding waiver of the maturity date, unsupported by plausible allegations. Opinion and Order at 13, ECF No. 46. Plaintiff's Third Amended Complaint provides additional factual allegations regarding waiver and newly alleges the alternative theory that Cenlar amended the contract. Quality does not assert that Plaintiff's Third Amended Complaint fails to plausibly allege contract waiver or contract amendment. Whether Plaintiff plausibly alleged a contract waiver or amendment is therefore not before the Court and is accepted as plausible and true for the purposes of this motion.

Quality first argues that Plaintiff's FDCPA claim fails because Plaintiff no longer alleges that Quality was *aware* of the contract waiver or contract amendment. However, whether Quality was aware that it lacked the present right to possession when it sold Plaintiff's property is irrelevant. The FDCPA prohibits entities engaged in the enforcement of nonjudicial foreclosure proceedings from effecting the dispossession of the plaintiff's property, absent lawful authority. *Barnes*, 963 F.3d at 998. Quality's motion does not cite to, and the Court is unaware of, any authority holding that to plausibly state an FDCPA claim the plaintiff must allege that the defendant entity had knowledge that it lacked the present right to possession when it dispossessed the plaintiff of his property. Accepting Plaintiff's unchallenged factual allegations as true, Plaintiff plausibly alleges that he was not in default and that Quality therefore lacked the present right to possession of Plaintiff's Property when it effected the foreclosure sale. Plaintiff plausibly states a claim against Quality under § 1692f(6) of the FDCPA.

Next, Quality argues that Plaintiff fails to plausibly allege that Quality is vicariously liable for Citi or Cenlar's conduct regarding waiver. Plaintiff alleges that Cenlar was an agent of Citi and that Cenlar employed Quality to conduct a foreclosure sale. TAC ¶¶ 6, 34. Plaintiff's allegation that Cenlar hired Quality to conduct a foreclosure sale is a plausible factual allegation accepted as true for purposes of ruling on a motion to dismiss. In any event, whether Quality was employed by Cenlar is not dispositive. Because Plaintiff's FDCPA claim against Quality is distinct from his claims against Citi and Cenlar, the relevant factual allegation is that Quality conducted a foreclosure sale of Plaintiff's property without the present right to possession. Quality does not challenge the plausibility of Plaintiff's allegation that he was not in default when Quality sold Plaintiff's Property. If proved, Quality lacked the present right to possession when it sold Plaintiff's Property, violating the FDCPA.

Last, Quality argues that violations of the Oregon Trust Deed Act are not, by themselves, FDCPA violations. Plaintiff alleges that Quality did not have the present right to possession because it foreclosed without proper service and publication of notice (ORS 86.774) and without a proper sale (ORS 86.782), violating the Oregon Trust Deed Act. TAC ¶ 70. As the Court previously explained, "Plaintiff's allegations regarding Quality's failure to properly serve notice, failure to adequately publish, and failure to properly effectuate the sale of Plaintiff's Property implicate violations of state law, they do not implicate violations of the FDCPA." Opinion and Oregon at 20, ECF No. 46 (citing *Obduskey*, 586 U.S. at 480) ("antecedent steps required under state law to enforce a security interest" are not within the scope of the FDCPA)). However, violations of the Oregon Trust Deed Act, in certain circumstances, can provide a basis for setting aside a nonjudicial foreclosure. *Staffordshire Invs., Inc. v. Cal-W. Reconveyance Corp.*, 209 Or. App. 528, 542 (2006). "The [Oregon Trust Deed] Act represents a well-coordinated statutory scheme to protect grantors from the unauthorized foreclosure and wrongful sale of property, while at the same time providing creditors with a quick and efficient remedy against a defaulting grantor." *Id.* (emphasis added).

Unlike the prior complaint dismissed by the Court, Plaintiff's Third Amended Complaint shifts the focus from *what* Quality allegedly failed to do, to *why* Quality lacked the lawful authority to sell Plaintiff's property. Whereas Plaintiff's prior complaint alleged that Quality violated the FDCPA by failing to comply with the Oregon Trust Deed Act, Plaintiff now alleges that Quality had "no present right to the collateral because Defendants had not complied with the provisions of the Oregon Trust Deed Act." TAC ¶ 70. Quality does not challenge Plaintiff's allegation that Quality lacked the present right to possession because it failed to comply with the Oregon Trust Deed Act. Absent lawful authority, enforcement of a security interest through

non-judicial foreclosure violates § 1692f(6) of the FDCPA. *Barnes*, 963 F.3d at 998. While the antecedent steps required under state law to enforce a security interest, by themselves, are outside the scope of the FDCPA, Plaintiff plausibly alleges that Quality went beyond the antecedent steps and sold Plaintiff's home without lawful authority, violating the FDCPA.

## CONCLUSION

Quality's Motion to Dismiss (ECF No. 56) is DENIED.

DATED this 15th day of August 2025.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States District Judge
